UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 21-cv-22801-BLOOM/Otazo-Reyes**

ANTONIO MUNOZ,

    Plaintiff,

v.

REX WILLIAMS and DOUG
BRADLEY TRUCKING, INC.,

    Defendants.
_____/

**ORDER ON *DAUBERT* MOTION**

**THIS CAUSE** is before the Court upon Plaintiff Antonio Munoz's ("Plaintiff") *Daubert* Motion, ECF No. [73] ("Motion"). Defendant Doug Bradley Trucking, Inc. ("Bradley Trucking") filed a Response in Opposition, ECF No. [76] ("Response"), to which Plaintiff filed a Reply, ECF No. [80] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

On August 2, 2021, Defendant removed this case from the Circuit Court for the 11th Judicial Circuit of Florida in and for Miami-Dade County to this Court. s*ee* ECF No. [1]. In his Complaint, ECF No. [1-1] ("Complaint"), Plaintiff asserts the following claims for relief [1] against Defendant: Count II – vicarious liability; and Count III – dangerous instrumentality. *See id.* at 3-5. According to the Complaint, on or about May 13, 2020, Plaintiff was parked in a Ford F150 truck at or near

---

[1] Defendant Rex Williams and the related claim for negligence (Count 1) was previously dismissed. *See* ECF No. [25].

the Mobil gas station located at 16650 NW 27th Avenue in Miami Gardens, Florida. *Id.* at ¶¶ 8-9. At that location on that date, Rex Williams, an employee, agent or servant of Defendant, was acting within the course and scope of his employment or agency with Defendant when he operated a vehicle in a careless and negligent manner as to cause a collision with the vehicle occupied by Munoz. *Id*. at ¶¶ 6-9, 16. As a result, Plaintiff sustained serious bodily injuries. *See id.* at ¶¶ 19, 26. Defendant retained David DeLonga, M.D., Ph. D., P.E. ("DeLonga") to conduct an analysis of the automobile accident and provide his opinions in the fields of biomechanical engineering and radiology. *See* ECF Nos. [73-2] at 3, [76] at 2. In order to form his opinions, DeLonga reviewed Plaintiff's deposition transcript, medical records, MRI films, vehicle data, photographs of Plaintiff's vehicle, in-cab video from Defendant's tractor, an accident reconstruction report by Bloomberg Consulting professional engineer Chris Medwell, the pleadings in this case, and a photograph of Plaintiff's left side. ECF No. [76] at 2-3.

In the Motion, Plaintiff requests that the Court exclude the testimony of DeLonga. *See* ECF No. [73] at 1. Plaintiff argues that DeLonga's opinions are inadmissible because DeLonga's opinions as to what caused Plaintiff's injuries are not supported by the facts and are not the product of reasoned methodology. ECF No. [73] at 5-9. Defendant responds that DeLonga's expert report and testimony establish the qualifications, reliability, and helpfulness necessary to render his opinions admissible. ECF No. [76] at 8.

II.     **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir.

2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the court must engage in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *See id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's

discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[2]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation and internal quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *See id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *See id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered before October 1, 1981.

explained." *See id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations and internal quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *See Rink*, 400 F.3d at 1293 n.7.

On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary

determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III. DISCUSSION

As an initial matter, Plaintiff does not challenge DeLonga's qualifications.[3] The Court reviewed DeLonga's expert report, curriculum vitae, testimony list, and deposition transcript and determines that DeLonga is qualified to opine on the matters covered in his expert report. As stated above, Plaintiff argues that DeLonga's opinions are inadmissible because DeLonga's opinions about what caused Plaintiff's injuries are not supported by the facts nor the product of reasoned methodology. ECF No. [73] at 5-9. Plaintiff also raises the argument that DeLonga's testimony would not be helpful in its Reply. ECF No. [80] at 3-4. Because Defendant argued that DeLonga's testimony satisfied the helpfulness prong in its response to Plaintiff's Motion, the Court will address both of the challenged *Daubert* factors of reliability and helpfulness.

### A. Reliability

Plaintiff argues that DeLonga's methodology is deficient because DeLonga: (1) selectively considered some facts and ignored others;[4] (2) did not have any comparable simulations; and (3) admitted that there is no minimum DeltaV force required to cause a permanent injury. ECF No.

---

[3] Plaintiff clarifies that he does not dispute the qualifications of DeLonga as either a biomechanical engineer or radiologist. ECF No. [80] at 1.

[4] Plaintiff specifically argues that because DeLonga has no actual knowledge of the position of Plaintiff or Plaintiff's truck at the time of impact, nor the weight of Defendant's vehicle, his conclusions are not supported by first-hand knowledge or verifiable data and are therefore deficient. ECF No. [73] at 6-7. DeLonga testified at deposition that although not knowing the exact weight of Defendant's vehicle could cause an inaccuracy, "[t]here was other data though that allowed [him] to confirm a worst case speed analysis based on just the kinematics of the trailer." ECF No. [73-2] at 13. At deposition, DeLonga also testified that he based his conclusions about how Plaintiff was positioned in Plaintiff's vehicle on Plaintiff's deposition testimony. *Id* at 32. Although Plaintiff contends that if the position were different the analysis may be different, there is no evidence to suggest that Plaintiff was in a different seat or facing a direction other than forward.

[73] at 7. Plaintiff also argues that DeLonga has not identified any basis to allow him to offer opinions as to causation based simply on the review of two radiological studies. *Id*. at 9. Defendant responds that DeLonga testified he relied on multiple sources of verifiable data and conducted his analysis applying the differential diagnosis methodology which has been subject to peer review and publication and is scientifically accepted. *See* ECF Nos. [76], [76-6], [76-7].

The Court agrees with Defendant that DeLonga reviewed case-specific materials to form the opinions and conclusions contained in his report using the differential diagnosis methodology. DeLonga reviewed Plaintiff's medical records, MRI films, photographs of Plaintiff's car, in cab video of Defendant's vehicle that showed its acceleration as well as its speed, technical data of the accident vehicles, accident simulation, and an accident reconstruction report by engineer Chris Medwell. ECF No. [76-3]. Differential diagnosis is a scientifically accepted methodology that meets the *Daubert* guiding factors. *See* Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1309 (11th Cir. 2014).

DeLonga articulated the facts that he relied upon and explained why he did not include other facts, such as Plaintiff's memory of being struck by Defendant's vehicle twice, into his calculations – because the memory was not supported by the data. *See* ECF No. [73-2] at 16. Although DeLonga only relied on one simulation, with an error rate in vehicle simulations that he testified is approximately 40%, he relied on multiple sources of information to arrive at his conclusion, and not only the simulation. DeLonga reviewed the data related to the accident as well as Plaintiff's medical records and radiological imaging. DeLonga's expert report indicates that his opinions and conclusions were formed on the basis of considering all of the data, images, and records and not looking in isolation at the medical information or accident-related information. *See* ECF No. [ 76-3].

Plaintiff's challenges do not undermine the Court's determination that DeLonga employed acceptable methodology. Plaintiff's arguments about additional evidence and materials DeLonga should have considered are more appropriate for cross-examination and go to the weight and credibility of his opinions, rather than the admissibility of his opinions. *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345 (citing *Daubert*, 509 U.S. at 596) ("The identification of [alleged] flaws in generally reliable scientific evidence is precisely the role of cross-examination."); *Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662).

### B. Helpfulness

Plaintiff raises, for the first time in its Reply, that DeLonga's causation opinions are not helpful. Plaintiff argues that it is undisputed that his vehicle was struck by Defendant's vehicle and Plaintiff sustained injuries in the immediate aftermath. As such, Plaintiff cites to out-of-circuit cases and contends that the force of the collision has been held to be of no material importance. *See* ECF No. [80] at 3-4. Moreover, Plaintiff asserts that, because DeLonga was not able to say how much force was necessary to cause a permanent injury and there was an error rate in simulations of about 40%, the testimony would not be helpful. *Id*. at 4. The Court reminds Plaintiff that it is improper to raise an argument for the first time in a reply, and the Court need not consider such arguments. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this district generally do not consider these arguments). Nonetheless, because Defendant addressed helpfulness in their response, the Court considers whether Defendant has met

its burden of demonstrating that DeLonga's testimony will be helpful to the trier of fact. Defendant argues that DeLonga's testimony will be helpful to explain the technical, scientific, and medical issues related to how the forces applied to Plaintiff in the collision may have or may not have contributed to Plaintiff's injuries. *See* ECF No. [76] at 7.

The Court agrees with Defendant and considers such analysis to be beyond the understanding of the average lay person. DeLonga will be permitted to offer his expert opinions.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [73]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 31, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record